Amanda L. Groves (SBN: 187216)
agroves@winston.com
Sean D. Meenan (SBN: 260466)
smeenan@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Shawn R. Obi (SBN: 288088)
sobi@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Defendant
DIAMOND FOODS, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELYN MCGEE, on behalf of herself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIAMOND FOODS, INC.,<br><br>Defendant. | **Case No. 14-cv-2446 JAH DHB**<br>Pleading Type: Class Action<br><br>**DEFENDANT DIAMOND FOODS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date: December 22, 2014<br>Time: 2:30 p.m.<br>Courtroom: 13B<br>Judge: Hon. John A. Houston<br><br>Complaint Filed: October 14, 2014 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..........................................................................................................1

II. STATEMENT OF ALLEGED FACTS ........................................................................1

III. STANDARD OF REVIEW............................................................................................3

    A. Rule 12(b)(1) ......................................................................................................3

    B. Rule 12(b)(6) ......................................................................................................3

IV. ARGUMENT ..................................................................................................................4

    A. With No "Injury In Fact," Plaintiff Lacks Article III Standing .................4

    B. Even If Plaintiff Had Standing, She Has Failed to State a Claim.............7

        1. Plaintiff's UCL "Unfair Prong" Claim Lacks Merit .......................7

        2. Diamond's Lawful Use of Trans Fat Does Not Constitute a Public Nuisance ..................................................................................10

        3. Plaintiff's Breach of Implied Warranty of Merchantability Claim Fails..................................................................................................11

V. CONCLUSION ............................................................................................................13

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Suzuki Motor Corp. v. Super. Ct.*
  37 Cal. App. 4th 1291 (1995) ......................................................................... 11

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................................... 4, 11

*Bardin v. Daimler Chrysler Corp.*
  136 Cal. App. 4th 1255 (2006) ......................................................................... 8

*Bell Atl. v. Twombly*
  550 U.S. 544 (2007) ......................................................................................... 4

*Birdsong v. Apple, Inc.*
  590 F.3d 955 (9th Cir. 2009) .......................................................................... 11

*DaimlerChrysler Corp. v. Cuno*
  547 U.S. 332 (2006) ..................................................................................... 3, 5

*Daugherty v. Am. Honda Motor Co., Inc.*
  144 Cal. App. 4th 824 (2006) ........................................................................... 8

*Herrington v. Johnson & Johnson Consumer Cos.*
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ............................................ 5, 6, 7

*Hodges v. Apple Inc.*
  2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ................................................. 9

*Hoyte v. Yum! Brands, Inc.*
  489 F. Supp. 2d 24 (D.D.C. 2007) .................................................................. 11

*In re Tobacco II Cases*
  46 Cal. 4th 298 (2009) ...................................................................................... 7

*Institoris v. City of Los Angeles*
  210 Cal. App. 3d 10 (1989) ............................................................................ 10

*Kane v. Chobani, Inc.*
  2013 WL 3776172 (N.D. Cal. July 15, 2013) ................................................ 10

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*Khoury v. Maly's of California, Inc.*
    14 Cal. App. 4th 612 (1993) ........................................................................................ 9

*Leadsinger, Inc. v. BMG Music Publ'g*
    429 F. Supp. 2d 1190 (C.D. Cal. 2005) ....................................................................... 4

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ................................................................................................ 3, 4

*Miller v. Rykoff-Sexton, Inc.*
    845 F.2d 209 (9th Cir. 1988) ....................................................................................... 4

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*
    489 F.3d 1279 (D.C. Cir. 2007) ................................................................................... 5

*Rubio v. Capital One Bank*
    613 F.3d 1195 (9th Cir. 2010) ..................................................................................... 7

*Schnall v. Hertz Corp.*
    78 Cal. App. 4th 1144 (2000) ...................................................................................... 8

*Simpson v. California Pizza Kitchen, Inc.*
    989 F. Supp. 2d 1015 (S.D. Cal. 2013) ................................................................passim

*Venuto v. Owens-Corning Fiberglass Corp.*
    22 Cal. App. 3d 116 (1971) ....................................................................................... 10

*Viggiano v. Hansen Natural Corp.*
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................................................... 12

*Ward v. Mitchell*
    2012 WL 5301475 (N.D. Cal. Oct. 25, 2012) ............................................................. 9

**STATUTES**

Cal. Civ. Code §§ 3479-3493 ................................................................................................ 3, 7

Cal. Civ. Code § 3482 ............................................................................................................. 11

Cal. Com. Code § 2314 ........................................................................................................... 12

Cal. Com. Code § 2316 ........................................................................................................... 12

Cal. Ed. Code § 49431.7 ........................................................................................................ 1, 9

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

iii

Cal. Health & Safety Code § 114377 ........................................................................... 1, 9

**OTHER AUTHORITIES**

21 C.F.R. § 101.9(c)(2)(ii)) ............................................................................................ 1

21 C.F.R. §§ 184.1472(b) ..................................................................................... 1, 9, 11

21 C.F.R. §184.1555(c)(2) .................................................................................... 1, 9, 11

Cal. Health & Safety Code § 11055 .............................................................................. 7

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 3

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 3, 4

http://www.fda.gov/Food/ucm292278.htm ................................................................... 2

Article III of the U.S. Constitution ................................................................... 1, 3, 4, 5

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff's Complaint asks the judicial branch to do what the legislative and executive branches have not: outlaw the sale of retail grocery items containing trans fats. Trans fats are indisputably legal food ingredients, including as used in the certain Pop Secret popcorn varieties at issue here (the "Pop Secret Products"). *See e.g.*, 21 C.F.R. §§ 184.1472(b), 184.1555(c)(2). The FDA does require the ingredient be identified and disclosed (21 C.F.R. § 101.9(c)(2)(ii)), but Plaintiff does not and cannot complain that the Pop Secret Products lack trans fat disclosures—or that Diamond misrepresented the products or their ingredients in any way. Nor does Plaintiff contend that she purchased the Pop Secret Products in California restaurants or schools, the only two venues the state legislature has deemed should be trans-fat free. See Cal. Health & Safety Code § 114377; Cal. Ed. Code § 49431.7 cited in Compl. ¶ 64. Instead, the only outlet Plaintiff identifies for her purchases are from a retailer (Compl. ¶ 57), wholly outside the purview of the statutes Plaintiff cites. With no legislative or executive "hook," Plaintiff asks this Court to rewrite these two trans-fat statutes and judicially ban trans fat in all sale outlets throughout all the states in the country. Compl. ¶ 6 (On behalf of a purported nationwide class, Plaintiff "seeks an order compelling Defendant to [ ] cease using artificial trans fat as an ingredient [ ].")

Notably, this is not Plaintiff's counsel's first attempt at a judicial ban on trans fats. Last year, the same theory was pled with respect to frozen pizzas in Simpson v. California Pizza Kitchen, Inc., Case No. 13-cv-164 JLS (JMA). Judge Sammartino dismissed all the claims, correctly holding that the plaintiff lacked Article III standing and could not state a UCL, public nuisance or implied warranty claim. Diamond respectfully submits the same result – with prejudice – should be reached here, and the instant motion should be granted.

## II. STATEMENT OF ALLEGED FACTS

As alleged in the Complaint, Diamond produces a variety of different Pop Secret microwave popcorn products, some of which contain trans fats. Compl. ¶¶ 3, 5. Plaintiff does not allege that Diamond failed to disclose the trans fat, misrepresented any facts about its products or failed to truthfully and accurately label the products in any way. *See supra*. Nor does Plaintiff deny that trans fat is legal according to FDA standards and a perfectly allowable ingredient in Defendant's products.[1] Instead, Plaintiff cites to a number of regulatory measures addressing trans fats in restaurants and schools and in other countries. *Id.* at ¶¶ 21-26. She does not allege that Diamond violated any of these regulations or that they even apply to Plaintiff's purchases of the Pop Secret Products from Walmart.

Regarding damages, Plaintiff alleges that she "suffered physical injury" from consuming the Pop Secret Products "because consuming artificial trans fat in any quantity causes inflammation and damage to vital organs and an increased risk of heart disease, diabetes, cancer and death." *Id.* at ¶¶ 67, 93. Plaintiff does not allege any specific physical injury or negative health effects she purportedly suffered, and instead relies on various literature that trans fat causes increased risks of certain medical conditions (*see, e.g., id.* at ¶¶ 27-54). Similarly, Plaintiff alleges that she suffered "emotional harm" from consuming the Pop Secret Products, but fails to allege the nature or extent of the alleged "emotional harm." *Id.* at ¶ 93. Plaintiff also seeks economic damages, claiming that without Diamond's "unlawful" conduct, she allegedly "would not have been able to purchase" the Pop Secret Products "or would have only been able to purchase Pop Secret popcorn varieties containing safe

---

[1] Although not alleged in the Complaint, Diamond recognizes that the FDA is currently reviewing the status of trans fats, including their current GRAS ("generally recognized as safe") status. See http://www.fda.gov/Food/ucm292278.htm. However, no action has been taken and no timeline for a decision has been provided. If the FDA revokes GRAS status, of course, Diamond would comply within or before the time period the FDA identifies to implement required formula changes. Plaintiff's Complaint end runs this process, seeking to accomplish a retroactive determination that trans fat cannot be used.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

2

DEFENDANT DIAMOND FOODS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 14CV2446 JAH DHB

alternatives to PHVO and trans fat." *Id.* at ¶ 71.

Plaintiff purports to represent all purchasers of any one of the Pop Secret Product varieties since January 2008, and asserts claims for: (1) violation of the unfair prong of California's Unfair Competition Laws ("Section 17200" or "UCL"); (2) public nuisance as defined by Cal. Civ. Code §§ 3479-3493; and (3) breach of the implied warranty of merchantability. Compl. ¶¶ 72, 73. Plaintiff seeks to enjoin Diamond from using trans fat as an ingredient in the Pop Secret Products and for monetary damages in the form of restitution and disgorgement of Diamond's profits received from the sale of the Pop Secret Products. *Id.* at ¶ 6; Prayer For Relief.

### III. STANDARD OF REVIEW

#### A. Rule 12(b)(1)

Article III of the U.S. Constitution limits federal courts to deciding only actual "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." (citation and quotations omitted)).

The Supreme Court has outlined three standing requirements: (1) the plaintiff must have suffered an actual, concrete, and particularized injury in fact; (2) there must be a causal connection between the injury and the conduct complained of such that the alleged injury is fairly traceable to the challenged conduct; and (3) it must be likely that the injury will be redressed by a favorable decision. *Id.* at 560-61. The party invoking federal jurisdiction has the burden of establishing these three elements. *Id.* at 561. Where a plaintiff lacks standing, the action should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

#### B. Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

3
DEFENDANT DIAMOND FOODS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 14CV2446 JAH DHB

1  dismiss a complaint for "failure to state a claim upon which relief can be granted."
2  Fed. R. Civ. P. 12(b)(6).  A complaint fails to state a claim under Rule 12(b)(6) unless
3  it contains "enough facts to state a claim for relief that is plausible on its face." *Bell*
4  *Atl. v. Twombly*, 550 U.S. 544, 547 (2007). The court should not accept unreasonable
5  inferences or unwarranted deductions of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678
6  (2009) (noting that "[t]hreadbare recitals of the elements of a cause of action,
7  supported by mere conclusory statements, do not suffice"). In other words, a
8  complaint must allege "more than labels and conclusions" or a "formulaic recitation of
9  the elements of a cause of action." *Twombly,* 550 U.S. at 555. Rather, the factual
10 allegations "must be enough to raise a right to relief above the speculative level." *Id.*
11 Where, as here, the complaint contains unsupported factual allegations and
12 implausible theories of relief, Rule 12(b)(6) requires that the complaint be dismissed.
13 *Id.* at 547.
14     Although a motion to dismiss may be granted with leave to amend, leave to
15 amend is not required where "any amendment would be futile."  *See Leadsinger, Inc.*
16 *v. BMG Music Publ'g*, 429 F. Supp. 2d 1190, 1197 (C.D. Cal. 2005); *Miller v. Rykoff-*
17 *Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citation omitted) (futility means that
18 "no set of facts can be proved under the amendment to the pleadings that would
19 constitute a valid and sufficient claim or defense").

20 **IV.   ARGUMENT**
21    **A.   With No "Injury In Fact," Plaintiff Lacks Article III Standing**
22     To meet the strict standing requirements of Article III, a plaintiff must
23 adequately establish: (1) an injury in fact (i.e., a "concrete and particularized"
24 invasion of a "legally protected interest"); (2) causation (i.e., a " 'fairly ... trace[able]'
25 " connection between the alleged injury in fact and the alleged conduct of the
26 defendant); and (3) redressability (i.e., it is " 'likely' " and not "merely 'speculative' "
27 that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing
28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

suit). *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992). The Supreme Court has described these as the "irreducible constitutional minimum" requirements (*id.*), designed to limit courts' decisions to actual cases or controversies. As the Supreme Court has also explained, this limitation is crucial to maintaining the "tripartite allocation of power" set forth in the U.S. Constitution. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

The Complaint here, seeking to accomplish by judicial fiat what the California legislature and FDA have declined to do, runs directly contrary to these principles. Even though the use of trans fats in the Pop Secret Products is permissible and regulated by the FDA and California legislature, Plaintiff seeks a judicial ban of the ingredient. Perhaps recognizing the standing obstacles this position presents, the Complaint includes a specific section entitled "**Injury**" In it, Plaintiff attempts to outline injuries she has suffered beyond her mere dissatisfaction with the law. Plaintiff claims physical injury—"because consuming artificial trans fat in *any quantity* causes inflammation and damage to vital organs and increased risk of heart disease, diabetes, cancer and death." Compl. ¶ 67 (emphasis added). She also alleges monetary "injury," claiming Diamond somehow prevented her from purchasing the Pop Secret varieties without trans fat or other trans-fat-free alternatives sold by Pop Secret competitors. *Id.*, ¶ 71. These allegations do not satisfy either of the two injury requirements for cases involving contaminated foods and pharmaceuticals: "(1) the increased risk of harm from exposure to a dangerous substance; or (2) the financial loss from purchasing a product in reliance on false or misleading information." *Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022 (S.D. Cal. 2013) (citation omitted).

*First*, to establish increased risk of harm, Plaintiff must show that there is both "(i) a substantially increased risk of harm and (ii) a substantial probability of harm with that increase taken into account." *Simpson*, 989 F. Supp. 2d at 1022; *Herrington*

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*v. Johnson & Johnson Consumer Cos.*, 2010 WL 3448531, at *3 (N.D. Cal. Sept. 1, 2010) (citing *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,* 489 F.3d 1279, 1295 (D.C. Cir. 2007)).  In *Simpson*, the court applied this test and found that the plaintiff had failed to allege an increased risk of harm from her consumption of the frozen pizzas containing trans fats.  989 F. Supp. 2d. at 1022 ("the Court is not convinced that consuming TFAs five times over the period of a year represents a substantial increased risk of harm, much less that the probability of that harm is substantial.").  In so holding, the court reasoned that "[w]hile Plaintiff presents numerous articles concerning trans fats, she does not allege facts that establish that the consumption of trans fats in the amount present in the Contested Pizzas are sufficient to cause any harmful effects."  *Id.*  Here, Plaintiff does not allege how often she consumed the Pop Secret Products, but states that she *purchased* the products (for her and others) "once every two to three months over the past three years."  Compl. ¶ 56.  Nothing in the Complaint suggests that purchasing (or consuming) the products a few times a year is sufficient to cause harmful effects, let alone a "substantially increased risk of harm" plus "a substantial probability of harm with that increase taken into account," as required for standing.  *Simpson*, 989 F. Supp. 2d. at 1022.

*Second*, an economic injury typically requires a loss of the plaintiff's benefit of the bargain, such as by overpayment, loss in value, or loss of usefulness.  *Simpson*, 989 F. Supp. 2d. at 1022; *Herrington*, 2010 WL 3448531 at *4.  In *Simpson*, the court rejected the notion that plaintiff had suffered any economic injury due to her purchases of the pizzas:

> Plaintiff alleges that she paid for, and therefore lost money due to her purchase of, the Contested Pizzas. She also, however, consumed the pizzas. Consumption is the purpose for which one purchases frozen foods. Thus, Plaintiff received the benefit of her bargain from the purchase of the Contested Pizzas. Moreover, Plaintiff's purchases were not made on the basis of false or misleading information, as the fact that the Contested Pizzas contained TFAs was explicitly divulged in the nutrition facts panel on each box.  Therefore, having not alleged any advertising or wording on the product that may have misled Plaintiff into

> believing that the Contested Pizzas were free of TFAs, Plaintiff has not alleged an injury premised on economic loss due to misleading information.

989 F. Supp. 2d at 1022-23 (internal citations omitted).

The reasoning in *Simpson* is squarely on point and should be applied here. As in *Simpson*, Plaintiff does not allege that she purchased the Pop Secret Products on the basis of any false or misleading information. On the contrary, Plaintiff does not dispute that the trans fat content is explicitly stated on the nutritional label of each product at issue in this case.[2]

Like *Simpson*, Plaintiff here also consumed the Pop Secret Products she purchased (Compl. ¶¶ 4, 8, 55), and likewise, thus "received the benefit of her bargain." 989 F. Supp. 2d at 1022-23; *see also Herrington,* 2010 WL 3448531 at *4. Plaintiff accordingly has failed to establish either the economic or physical injury required, and all of her claims should be dismissed for lack of standing.

### B. Even If Plaintiff Had Standing, She Has Failed to State a Claim

#### 1. Plaintiff's UCL "Unfair Prong" Claim Lacks Merit

California's unfair competition law (the "UCL") prohibits fraudulent, unfair, and unlawful business acts. *In re Tobacco II Cases*, 46 Cal. 4th 298, 311(2009). In *Simpson*, the plaintiff asserted claims under the UCL's "unlawful" and "unfair" prongs, and the Court soundly rejected both theories. 989 F. Supp. 2d at 1025-26. First, the Court held that the use of trans fat is not unlawful, finding that it neither constitutes a public nuisance under sections 3479 to 3493 of the California Civil Code, nor does it render a food "adulterated" under section 11055 of California's Health and Safety Code. 989 F. Supp. 2d at 1026. Plaintiff does not challenge the *Simpson* court's analysis under the "unlawful" prong, but seeks here to re-litigate whether the use of trans fats violates the "unfair" prong; an argument the *Simpson*

---

[2] *See generally* Compl.; *see also* http://www.popsecret.com/products/#category=classic_flavors (providing the Nutritional Information found on the labels for each of the Products).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

court similarly rejected.

As a preliminary matter, California courts utilize three different tests to determine whether a business practice is "unfair" under the UCL. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) ("California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action."). Some courts have held that, "[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006). This is the "FTC test." Other courts use a "public policy test," requiring plaintiffs to establish that the challenged practice violates public policy as declared by specific – and applicable – statutory, constitutional or regulatory provisions. *Bardin v. Daimler Chrysler Corp.*, 136 Cal. App. 4th 1255, 1261 (2006). Still other courts have held that the court must apply a "balancing test" that defines unfair practices as those that are "immoral, unethical, unscrupulous, or substantially injurious to consumers," where the utility of the practice does not outweigh the gravity of harm to its alleged victim. *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000). Plaintiff cannot state a claim under any of the three tests and her claim under the UCL "unfairness" prong should be dismissed.

*First*, Plaintiff fails to state a claim under the FTC test because she cannot allege an injury that she could not have reasonably avoided. <u>Daugherty</u>, 144 Cal. App. 4th at 839. In *Simpson*, the court applied the FTC test and disposed of Plaintiff's UCL claim since any of the plaintiff's alleged injuries from purchasing and consuming the pizzas at issue could have easily been avoided. *Id.* Because "the nutrition facts panels of all of the Contested Pizzas clearly indicate their TFA content and Plaintiff herself alleged some 18 alternative pizza brands and 165 alternative pizza products that do not contain TFAs," plaintiff could have avoided her injury by

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

purchasing one of the trans fat-free products instead. *Id.* The same logic applies here. The Pop Secret Products all clearly state the presence of trans fat on their labels (*see supra*, fn. 2) and Plaintiff has identified 84 different available varieties of microwaveable popcorn products that do not contain trans fats. *See* Compl. Ex. B. Indeed, as Plaintiff has pointed out, in addition to the Pop Secret Product varieties at issue in this case, Diamond also produces varieties of Pop Secret that do not contain trans fat, such as Pop Secret "94% Fat Free," "Light Butter," "Sweet 'n Crunchy Kettle Corn," and "Sea Salt." Compl. ¶ 58. Like *Simpson*, Plaintiff could have avoided any of her alleged injuries by simply purchasing any of these other varieties. *See Simpson*, 989 F. Supp. 2d 1015, 1026.

*Second*, Plaintiff fails to state a claim under the public policy test because she cannot "identify an actual policy based on a legal provision that the defendant violated." *Hodges v. Apple Inc.*, No. 13-CV-01128-WHO, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013). Instead, Plaintiff relies on California Health & Safety Code § 114377 and California Education Code § 49431.7. Those statutes deal exclusively with restaurants and schools, neither of which is at issue here. Indeed, the only outlet Plaintiff identifies for her purchases of the Pop Secret Products are a retailer, Walmart. Compl. ¶ 57. Plaintiff also cites public policies related to medical cost issues, and refers to government programs such as Medicare, Medicaid and the Veterans' Health Administration. Compl. ¶ 65. But again, no allegation of any statutory violation related to those programs is concluded -- let alone one that includes "with reasonable particularity the facts supporting the statutory elements of the violation." *Ward v. Mitchell*, No. C 12-03932 WHA, 2012 WL 5301475, at *5 (N.D. Cal. Oct. 25, 2012) citing *Khoury v. Maly's of California, Inc.,* 14 Cal. App. 4th 612, 618–19 (1993). Nor could Plaintiff amend to state such allegations, since the trans fats in Pop Secret Products are completely consistent with the applicable statutory scheme.

*Third*, Plaintiff fails to state a claim under the balancing test because Defendant's challenged practice is not "immoral, unethical, unscrupulous, or substantially injurious," but instead is consistent with the lawful status of the ingredient under applicable regulations. *See* 21 C.F.R. §§ 184.1472(b), 184.1555(c)(2). Nor does Plaintiff allege that she has suffered any "substantially injurious" effects from consuming the Pop Secret Products, or even any specific ill effects at all. As noted in *Simpson*, Plaintiff purchased and consumed the products, thereby receiving the benefit of the bargain. Compl. ¶¶ 4, 67. Plaintiff has not alleged any plausible injury, and certainly not one that outweighs Diamond's practice of including a lawful ingredient in its products.

In short, no matter which of the "unfair prong" tests the Court employs, Plaintiff has not and cannot state a claim, and her first cause of action under the UCL should be dismissed.

### 2. Diamond's Lawful Use of Trans Fat Does Not Constitute a Public Nuisance

Plaintiff's claim that the trans fat in the Pop Secret Products constitutes a public nuisance should be dismissed. "[A] plaintiff suing on this basis must show *special injury to himself* of a character different in kind—not merely in degree—from that suffered by the general public." *Institoris v. City of Los Angeles*, 210 Cal. App. 3d 10, 20 (1989) (emphasis added). This requirement reflects the public policy that community harms are "ordinarily properly left to the appointed representatives of the community," and not to private lawsuits by private plaintiffs. *See Venuto v. Owens-Corning Fiberglass Corp.*, 22 Cal. App. 3d 116, 123 (1971). Not surprisingly, courts that have considered public nuisance theories in the food ingredient context have rejected it.

In *Simpson*, for instance, the court dismissed the plaintiff's public nuisance claim because the plaintiff's allegations did not distinguish her from other consumers

of the products containing trans fat. 989 F. Supp. 2d at 1025. Instead, "TFAs are not uniquely harmful to Plaintiff" and "[a]ll consumers who have purchased the Contested Pizzas have 'lost money' by that act in the same manner that Plaintiff did." *Id.* Likewise in *Kane v. Chobani, Inc*., the court rejected plaintiff's public nuisance theory, since allegations that mislabeling on yogurt causes consumers to consume excess sugar did not constitute special injury sufficient to confer standing. 12-CV-02425-LHK, 2013 WL 3776172, at *5 (N.D. Cal. July 15, 2013). The court held that these allegations were not "different in kind" to those suffered by other consumers. *Id.*

In addition, even if Plaintiff had suffered some unique injury, her public nuisance claim is contrary to the terms of the statutory scheme on which it is based. California Civil Code section 3482, titled "Acts Authorized By Law," provides that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." The use of trans fats in the Pop Secret Products is expressly authorized, as trans fats are lawful ingredients in the Pop Secret Products. *See, e.g.*, 21 C.F.R. §§ 184.1472(b), 184.1555(c)(2). Diamond's lawful use of trans fat as an ingredient in the Pop Secret Products cannot constitute a nuisance.

### 3. Plaintiff's Breach of Implied Warranty of Merchantability Claim Fails

Finally, Plaintiff's claim for breach of the implied warranty of merchantability also fails as a matter of law. "[T]he implied warranty does not require that goods fulfill a buyer's expectation; it only provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Super. Ct*., 37 Cal. App. 4th 1291, 1295 (1995). Thus, as the Ninth Circuit has explained, the implied warranty of merchantability is breached only where defendant's product "lacks even the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc*., 590 F.3d 955, 958 (9th Cir. 2009).

Here Plaintiff alleges that the Pop Secret Products are unfit for their ordinary

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

use – for human consumption – because they contain trans fat. Compl. ¶ 97. Plaintiff cannot plausibly or credibly allege that the Pop Secret Products were inedible or otherwise unfit for human consumption and the Court need not accept unreasonable inferences or unwarranted deductions of fact. *Iqbal*, 556 U.S. at 678. This is especially true here, where Plaintiff does not dispute that the label accurately describes the amount of trans fat, and Defendant made no contrary warranties or statements that otherwise could allegedly mislead a consumer.

Moreover, Plaintiff does not allege that she actually suffered any ill effects from consuming the Pop Secret Products. *See Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 27-28 (D.D.C. 2007) (dismissing implied warranty claim for trans fat-containing food because plaintiff did not allege that food was "in any way unpalatable or that [plaintiff] suffered any immediate ill effects"); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 896-97 (C.D. Cal. 2013) (implied warranty of merchantability claim dismissed where plaintiff failed to allege any facts suggesting that the soda is not merchantable or fit for use as a diet soft drink; "he has not, for example, alleged that the beverage was not drinkable, that it was contaminated or contained foreign objects.").

Plaintiff's breach of implied warranty claim fails for the additional reason that she has waived her rights under the implied warranty. Under Cal. Com. Code § 2314, "[u]nless excluded or modified ([under] Section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Under Cal. Com. Code § 2316, however, "[w]hen a buyer before entering into the contract has examined the goods or the sample model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him." In *Simpson*, the court dismissed the implied warranty claims where the plaintiff alleged that the pizzas containing trans fats were "not safe for human

1 consumption," their ordinary purpose. 989 F. Supp. 2d at 1026-27. The court rejected this theory, reasoning that the pizzas were "clearly labeled as including TFAs per FDA labeling requirements" and that the plaintiff "had a sufficient opportunity to examine [the pizzas] prior to purchase." *Id.* According to the court, the plaintiff had waived her right under any implied warranty because she failed to allege "any justifications for her failure to inspect the [pizzas] before purchasing and consuming them." *Id.* Likewise here, Plaintiff has allegedly "repeatedly purchased and consumed" the Pop Secret Products (Compl. ¶¶ 4, 8), which Plaintiff does not dispute are labeled as containing trans fats as required under federal labeling requirements. Plaintiff, as in *Simpson*, had "sufficient opportunity to examine" the Pop Secret Products prior to purchasing and consuming them. Therefore, Plaintiff has waived any implied warranty and her claim should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Diamond respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice as set forth herein.

Dated: November 12, 2014        Respectfully submitted,

                                WINSTON & STRAWN LLP


                                By: */s/ Amanda L. Groves*
                                    Amanda L. Groves
                                    Sean D. Meenan
                                    Shawn R. Obi

                                    Attorneys for Defendant
                                    DIAMOND FOODS, INC.