1  Amanda L. Groves (SBN: 187216)
   agroves@winston.com
2  Sean D. Meenan (SBN: 260466)
   smeenan@winston.com
3  WINSTON & STRAWN LLP
   101 California Street, 35th Floor
4  San Francisco, CA 94111-5802
   Telephone: (415) 591-1000
5  Facsimile: (415) 591-1400

6  Shawn R. Obi (SBN: 288088)
   sobi@winston.com
7  WINSTON & STRAWN LLP
   333 S. Grand Avenue
8  Los Angeles, CA 90071-1543
   Telephone: (213) 615-1700
9  Facsimile: (213) 615-1750

10 Attorneys for Defendant
   DIAMOND FOODS, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELYN MCGEE, on behalf of herself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIAMOND FOODS, INC.,<br><br>Defendant. | **Case No. 3:14-cv-02446 JAH DHB**<br>Pleading Type: Class Action<br><br>**DEFENDANT DIAMOND FOODS, INC.'S REPLY TO PLAINTIFF JACQUELYN MCGEE'S OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date: December 22, 2014<br>Time: 2:30 p.m.<br>Courtroom: 13B<br>Judge: Hon. John A. Houston<br><br>Complaint Filed: October 14, 2014 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT.........................................................................................................1

    A. Plaintiff's Alleged "Risk" of Physical Harm is Insufficient to Establish Article III Standing.............................................................................1

    B. Plaintiff's Threadbare Allegation of Physical Harm Do Not Save Her Claims........................................................................................................3

    C. Plaintiff's Bald Assertions of Economic Harm Do Not Satisfy Article III Standing. ........................................................................................4

    D. Even If Plaintiff Had Standing, She Has Failed to State a Claim..............5

        1. Plaintiff's UCL "Unfair Prong" Claim Lacks Merit. .....................5

        2. Diamond's Lawful Use of Trans Fat Does Not Constitute a Public Nuisance. ..............................................................................8

        3. Plaintiff's Breach of Implied Warranty Claim Fails. ......................8

    E. Alternatively, this Court May Exercise its Discretion to Dismiss or Stay this Case on Primary Jurisdiction Grounds..........................................9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adobe Systems, Inc. Privacy Litigation*
  2014 WL 4379916 (N.D. Cal. Sept. 4, 2014) ...................................................... 6

*Bardin v. Daimlerchrysler Corp.*
  136 Cal. App. 4th 1255 (2006) .................................................................. 5, 7

*Birdsong v. Apple, Inc.*
  590 F.3d 955 (9th Cir. 2009) ...................................................................... 8

*Boris v. Wal-Mart Stores, Inc.*
  2014 WL 1477404, at *6 (C.D. Cal. Apr. 9, 2014) ......................................... 6, 7

*Boysen v. Walgreen Co.*
  2012 WL 2953069 (N.D. Cal. July 19, 2012) .................................................... 4

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
  20 Cal. 4th 163 (1999) ............................................................................. 6

*Central Delta Water Agency v. United States*
  306 F.3d 938 (9th Cir. 2002) .................................................................. 1, 2

*Covington v. Jefferson Cnty.*
  358 F.3d 626, 652-53 (9th Cir. 2003) ........................................................... 1

*Daugherty v. Am. Honda Motor Co., Inc.*
  144 Cal. App. 4th 824 (2006) .................................................................... 6

*Davel Commc'ns v. Qwest Corp.*
  460 F.3d 1075 (9th Cir. 2006) .................................................................. 9

*Experian Info. Solutions, Inc. v. Lifelock, Inc.*
  633 F. Supp. 2d 1104, 1107 (C.D. Cal. 2009) ................................................. 6

*Gregory v. Albertson's, Inc.*
  104 Cal. App. 4th 845 (2002) .................................................................... 5

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .................................................. 2

ii

DEFENDANT DIAMOND FOODS' REPLY TO PLAINTIFF JACQUELYN MCGEE'S OPPOSITION TO MOTION TO DISMISS COMPLAINT – Case No. 14CV2446 JAH DHB

*Institoris v. City of Los Angeles*
    210 Cal. App. 3d 10 (1989) ................................................................................8

*Kane v. Chobani*
    2013 WL 5289253, at \*6 (N.D. Cal. Sept. 19, 2013) ...........................................8

*Kunert v. Mission Fin. Servs. Corp.*
    110 Cal. App. 4th 242 (2003) .........................................................................5, 7

*Leonhart v. Nature's Path Foods, Inc.*
    2014 WL 6657809 (Nov. 21, 2014) ..................................................................10

*Saubers v. Kashi Co.*
    2014 WL 3908595 (S.D. Cal. Aug. 11, 2014) ...................................................10

*Schnall v. Hertz Corp.*
    78 Cal. App. 4th 1144 (2000) .............................................................................7

*Simpson v. California Pizza Kitchen, Inc.*
    989 F. Supp. 2d 1015 (S.D. Cal. 2013) ......................................................passim

*Swearingen v. Yucatan Foods, L.P.*
    2014 WL 2115790 (N.D. Cal. May 20, 2014), at \*2..........................................10

*Viggiano v. Hansen Natural Corp.*
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ................................................................9

*Kane v. Chobani, Inc.*
    2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ....................................................6

*Kwikset Corp. v. Superior Court*
    51 Cal. 4th 310 (Cal. 2011) .................................................................................6

*Wilson v. Frito-Lay N. Am., Inc.*
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..............................................................6

**STATUTES**

42 U.S.C. § 7671g..........................................................................................................1

Cal. Bus. & Prof. Code § 17204 ....................................................................................5

**OTHER AUTHORITIES**

21 C.F.R. § 170.30 (1997) .............................................................................................8

21 C.F.R. § 170.30 (c)(1), (d) (1997) ............................................................................. 8

21 C.F.R. § 170.38 ......................................................................................................... 4, 9

78 F.R. 67169, 67172 (Nov. 8, 2013) ............................................................................ 4

78 F.R. 67169-01, at 67170-67171 ................................................................................ 8

78 F.R. 67169-01 at 67169 ..................................................................................... 2, 9, 10

Restatement (Second) of Torts § 402A ......................................................................... 3

## I. INTRODUCTION

Plaintiff's 24-page Opposition, laden with lengthy references to inadmissible medical articles, inapplicable legislation, and environmental case law, contains not a single court decision to support the unprecedented relief sought: a nationwide ban of a legal ingredient. No other known court has banned a legal food ingredient, and for obvious reasons. Sugar, saturated fat, sodium, saccharine—all create risks, but a judicial ban would be inconsistent with the current legislative scheme, which requires disclosure instead of prohibition. As with Plaintiff's counsel's nearly identical theory presented in *Simpson v. California Pizza Kitchen, Inc.*, Case No. 13-cv-164 JLS (JMA), this case should be dismissed in its entirety.

## II. ARGUMENT

### A. Plaintiff's Alleged "Risk" of Physical Harm is Insufficient to Establish Article III Standing.

Plaintiff is wrong that "in the Ninth Circuit even a small probability of injury is sufficient to create a case or controversy." (Opp'n at 7.) *Central Delta Water Agency v. United States*, 306 F.3d 938, 949 (9th Cir. 2002), which Plaintiff cites for this proposition, made no such holding. Rather, the "small probability" language is part of the Ninth Circuit's description (and quote) of a Seventh Circuit case setting forth that Circuit's standard. 306 F.3d at 949. In the very next paragraph, the Ninth Circuit clarifies, "[i]n sum, we agree with those circuits that have recognized that a ***credible threat of harm*** is sufficient to constitute actual injury for standing purposes." *Id.* at 950 (emphasis added). Indeed, none of the Ninth Circuit cases cited by Plaintiff support the purported "small probability" standard.

Plaintiff further muddies the applicable standard by relying on environmental cases using "exposure" to establish Article III standing. (Opp'n at 4.) But as the Ninth Circuit has explained, plaintiffs in environmental cases may establish injury through exposure because Congress established this as injury: "[W]hatever we may personally feel about small but increased risks of serious human maladies arising from

1

DEFENDANT DIAMOND FOODS' REPLY TO PLAINTIFF JACQUELYN MCGEE'S OPPOSITION TO MOTION TO DISMISS COMPLAINT – Case No. 14CV2446 JAH DHB

ozone destruction, Congress recognized this precise injury by out-lawing the disposal of refrigerants…." *Covington v. Jefferson Cnty.*, 358 F.3d 626, 653 (9th Cir. 2004) citing 42 U.S.C. § 7671g. Congress has promulgated no similar regulations with respect to trans fats or PHOs. In fact, the FDA's "Tentative" determination regarding a potential adjustment to PHO's current GRAS status—which Diamond described in its Motion and the Opposition relied upon—makes clear that ***only "if finalized*** . . . food manufacturers would be ***no longer*** permitted to sell PHOs . . . without prior FDA approval." 78 F.R. 67169-01 at 67169 (emphasis added). And even then, the future "compliance date that would be adequate for producers to reformulate any products" would be designed to "minimize market disruption." *Id.* at 67174.

Moreover, *Herrington v. Johnson & Johnson Consumer Companies, Inc.*— cited in the Motion but ignored in the Opposition—declined to extend the environmental-risk rule into the product-liability context. 2010 WL 3448531, at *2-3 N.D. Cal. Sept. 1, 2010) (also noting that *Central Delta* alleged actual "damage[ ] in the past" and "negative effects … on the various crops that they grow"). As the court explained, "[p]laintiffs d[id] not cite controlling authority that the 'risk of harm' injury employed to establish standing in environmental cases applies equally to product liability actions." *Id.* Four years later, Plaintiff here is also unable to point to any such authority.

The *Simpson* court considered similar (indeed, identical) allegations of exposure-based risk of future disease, and reached the same conclusion as *Herrington:* the probability of harm was insufficient for standing. The Opposition attempts to distinguish *Simpson*, claiming the Popcorn Products have more trans fat and Plaintiff McGee consumed more than plaintiff Simpson. (Opp'n at 6-7.) But as with so many other statements in the Opposition, the Complaint nowhere alleges this assertion.[1] But it makes no difference. Even if Plaintiff consumed more trans fats, the possibility of

---

[1] *See, e.g.,* Opp'n at 6-7, 19, 21.

DEFENDANT DIAMOND FOODS' REPLY TO PLAINTIFF JACQUELYN MCGEE'S OPPOSITION TO MOTION TO DISMISS COMPLAINT – Case No. 14CV2446 JAH DHB

future harm she asserts falls well short of the actual or "substantial risk" of harm required. *Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022 (S.D. Cal. 2013); *Herrington*, 2010 WL 3448531, at *3.

Respectfully, conferring standing on the allegations here would be not only unprecedented, but have potentially far-reaching consequences. Take sugar consumption, for instance. Digesting products with added sugar causes an immediate spike of insulin and, over time, increased insulin levels leads to diabetes and a variety of maladies. But sugar consumers do not have standing to sue every manufacturer of products with sugar. The same is true for butter. As the Restatement (Second) of Torts § 402A, adopted in California, explains:

> "Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from overconsumption. . . . Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous."

Although in the context of strict liability, this statement reflects a common-sense policy that legal products with "some risk of harm" do not automatically create compensable injury. This Court should not be the first to hold otherwise, and Plaintiff's claims should be dismissed.

### B. Plaintiff's Threadbare Allegation of Physical Harm Do Not Save Her Claims.

Perhaps recognizing that the alleged risk may not establish standing, the Opposition repeatedly cites Paragraph 67 of the Complaint to establish actual physical injury, because "consuming artificial trans fat in any quantity causes inflammation and damage to vital organs." (Compl. ¶ 67.) Plaintiff suggests this allegation distinguishes *Simpson* (Opp'n. 6), but, in fact, *Simpson* included the very same allegation, verbatim. (Cf. *Simpson* Am. Compl., Docket No. 13 ¶ 70.) This

unsupported and implausible allegation did not confer standing in *Simpson* and it does not do so here.

As a preliminary matter, Paragraph 67's conclusory allegation finds no support in the myriad articles and authorities Plaintiff cites. The closest Plaintiff comes is citing a "Tentative Determination" for which the FDA has requested "Comment" and "Scientific Data and Information," which it must review before making any final determinations. (Opp'n at 2, quoting 78 F.R. 67169, 67172 (Nov. 8, 2013) [2].) Moreover, while that tentative determination speaks to the *risk* of future disease, it does not say that consumption of trans fat in any quantity causes *actual* inflammation or organ damage, as Plaintiff contends. (Opp'n at 2, quoting 78 F.R. 67169, 67172 (Nov. 8, 2013) (referring to the "risk of CHD").) Indeed, nowhere does Plaintiff allege she actually suffers from any health ailments and, consistent with the economic nature of the case, Plaintiff seeks only economic damages.

### C. Plaintiff's Bald Assertions of Economic Harm Do Not Satisfy Article III Standing.

The *Simpson* court found that Plaintiff's economic-injury allegations failed to establish standing for two reasons: (1) the pizzas were consumed (so Plaintiff received the benefit of the bargain); [3] and (2) the presence of trans fats was divulged on each

---

[2] *See also* 21 C.F.R. § 170.38; https://www.federalregister.gov/articles/2013/11/08/2013-26854/tentative-determination-regarding-partially-hydrogenated-oils-request-for-comments-and-for#h-12 ("If FDA makes a final determination that [PHOs] are not GRAS, a company could not use PHOs in food without approval from the FDA, although it may take some time for the change to be fully implemented.")

[3] *See also Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ("Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm. The products have not been recalled, have not caused any reported injuries, and do not fail to comply with any federal standards… Thus, Plaintiffs received the benefit of the bargain, as a matter of law, when they purchased

4

box and, therefore, plaintiff could not allege that she was misled. 989 F. Supp. 2d at 1022-23 (internal citations omitted). Plaintiff again tries and fails to distinguish *Simpson*, arguing that (1) in contrast to *Simpson*, Plaintiff McGee is a lay consumer who could not associate the disclosed trans fat with disease (Opp'n at 9-10); and (2) the *Simpson* court must have "presumed . . . plaintiff was aware of the harm caused by consuming artificial trans fat." (Opp'n at 10:5-8.) But, in fact, Ms. Simpson was also a lay consumer who (1) "bought the Trans Fat Pizzas seeking a Pizza that was safe for her and her family to consume"; and (2) did not learn until after "she repeatedly bought" the pizzas that they contained trans fat. [4] *Simpson* is indistinguishable on this point.

The false-advertising cases Plaintiff cites are equally unpersuasive, as in each the plaintiff's alleged economic injury was purchasing a product that, but for an allegedly unlawful label, would not have been purchased at the price paid. (Opp'n at 9-10.) Here, there is no dispute that Diamond disclosed the presence and amount of trans fats precisely as required. Without the economic harm required for standing, each of Plaintiff's claims should be dismissed.

### D. Even If Plaintiff Had Standing, She Has Failed to State a Claim.
#### 1. Plaintiff's UCL "Unfair Prong" Claim Lacks Merit.

Contrary to Plaintiff's suggestion, inadequate claims under the UCL's unfair prong are routinely dismissed on the pleadings. *See, e.g.*, *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1270 (2006); *Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242, 265 (2003); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 857 (2002). Plaintiff's failure to plausibly allege reliance and/or to satisfy any of the three tests of "unfairness" mandate dismissal here.

---

these products.")

[4] *Simpson* Am. Compl. ¶ 72; Opposition to Motion to Dismiss, *Simpson*, Docket No. 26 at 21:10-11.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Even if Plaintiff had plausibly alleged economic injury (which, as discussed above, she has not), UCL standing further requires that Plaintiff "lost [such] money or property *as a result of* unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). Despite Plaintiff's assertions to the contrary, this statutory requirement—commonly referred to as reliance—applies with equal force to all UCL claims, including those under the "unfair" prong. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (Cal. 2011); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013); *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1144 (N.D. Cal. 2013). Far from alleging that she understood the Popcorn Products met her definition of "healthy" products based to any false or misleading statements, Plaintiff asserts her understanding was "a result of" her own inability to "…associate . . . artificial trans fat with disease." (Opp'n at 9:3-12.) Of course, a plaintiff's individualized knowledge regarding ingredients fully disclosed pursuant to the FDCA is completely outside Diamond's control and is clearly not "a result of" anything Diamond did or did not do.

Second, Plaintiff's fails to satisfy any of the three "unfairness" tests. First, the FTC test does not apply here because (a) the disputed substances are disclosed on the product, and (b) there are available alternatives. *See Simpson*, 989 F. Supp. 2d at 1026, *citing Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006). Also, Plaintiff could have reasonably avoided her alleged "injury" by purchasing any of the numerous non-trans-fat alternatives that Plaintiff herself identified. (Compl. ¶¶ 58-59.) Plaintiff does not attempt to distinguish the case law cited in the Motion, nor does she cite to any other authority to contradict this position.

Plaintiff also fails the Public Policy test, which requires allegations that the conduct was "comparable to or the same as a violation of the law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). The cases Plaintiff cites do not lessen her burden in any respect. Indeed, *Adobe Systems, Inc. Privacy Litigation* found that defendant's conduct was "unfair" because it was

"comparable to or the same as a violation of the law." 2014 WL 4379916, at *18 (N.D. Cal. Sept. 4, 2014). Likewise, in *Experian Info. Solutions, Inc. v. Lifelock, Inc.*, plaintiff identified a "violat[ion] of an established public policy," set forth in the Fair Credit Reporting Act. 633 F. Supp. 2d 1104, 1107 (C.D. Cal. 2009). And in *Boris v. Wal-Mart Stores, Inc.*, the court dismissed the "unfair" claim because plaintiffs "ha[d] not pointed to any specific constitutional, statutory, or regulatory provision that embodies a policy that Equate Migraine's price and red packaging violate." 2014 WL 1477404, at *6 (C.D. Cal. Apr. 9, 2014). Here, the inclusion of trans fat in some Popcorn Product varieties violates no law. Moreover, the public policy "embodied" in the statutes Plaintiff cites (Compl. ¶¶ 64-65; Opp'n at 14) prohibit only California schools and restaurants from serving trans fat. Schools of course serve children, and restaurants serve products that generally lack the nutritional disclosures contained on packaged products like the Popcorn Products. Plaintiff cannot plausibly allege that Diamond violated the public policy embodied in those statutes, let alone that Diamond's conduct was "comparable or the same as a violation" of any law.

Finally, Plaintiff does not satisfy the Balancing (or "Substantial Injury" test.) *See Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000). For all her citations to articles, Plaintiff fails to identify any that support a plausible claim of actual injury, let alone "substantial" injury. Although Plaintiff contends Diamond's Motion did not support the utility of its conduct, as explained in its Motion, Diamond included trans fat in certain products because it is a lawful ingredient. (Mot. at 1, 10.) Plaintiff also complains that Diamond's "only possible countervailing utility" might be "decrease[d] production costs and slightly higher profits." (Opp'n at 13.) But seeking profits does not constitute an unfair business practice. *See Kunert*, 110 Cal. App. 4th at 265 (affirming dismissal, holding "the 'unfair' prong was not intended to eliminate retailers' profits"); *see also Bardin*, 136 Cal. App. 4th at 1270 (affirming dismissal, noting "[d]oes the use of less expensive and less durable materials in the manufacture of [defendant's] vehicles to make more money violate public policy? No.").

7

Plaintiff's failure to establish reliance and/or satisfy any of the tests of "unfairness" serve as two independent bases for dismissal of her UCL claim.

### 2. Diamond's Lawful Use of Trans Fat Does Not Constitute a Public Nuisance.

Plaintiff failed to state a claim for public nuisance, as she does not allege a "special injury" distinct from that purportedly suffered by the public. Her alleged "special injury"—physical and emotional harm and lost money from purchasing and consuming popcorn with trans fats (Compl. ¶ 93; Opp'n at 17)—identifies nothing unique to her and is exactly what the public at large or putative class members would allegedly suffer under plaintiff's claims. Such allegations are demonstrably deficient for a public nuisance claim. *Institoris v. City of Los Angeles*, 210 Cal. App. 3d 10, 20 (1989); *Kane v. Chobani*, 2013 WL 3776172, at *5; *Simpson*, 989 F. Supp. 2d at 1025.

Moreover, Diamond's use of trans fat is authorized by statute. 21 C.F.R. § 170.30 (1997). Plaintiff complains that Diamond cited regulations expressly authorizing use of two oils that underwent the FDA petition process to become Generally Recognized as Safe ("GRAS"), as opposed to the oils used by Diamond in its Popcorn Products. (Opp'n at 18.) This is a distinction without a difference, as the trans fat in the Popcorn Products indisputably achieved GRAS status through "[g]eneral recognition of safety through experience based on common use in food prior to January 1, 1958." 21 C.F.R. § 170.30 (c)(1), (d) (1997); 78 F.R. 67169-01, at 67170-67171.

### 3. Plaintiff's Breach of Implied Warranty Claim Fails.

The implied warranty of merchantability is breached only where a product "lacks even the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009). Plaintiff's theory is that the Popcorn Products were unfit for human consumption because she "suffered physical injury when she repeatedly consumed Defendant's Trans Fat Popcorns, because consuming artificial trans fat in any quantity causes inflammation and damage to vital organs and an

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

increased risk of heart disease, diabetes, cancer, and death." (Opp'n at 19, citing Compl. ¶ 67). As discussed above, the allegation that Plaintiff was somehow automatically harmed from consuming the Popcorn Products is both unsupported and implausible. Plaintiff does not allege any specific injuries she personally suffered, and indeed does not seek damages for personal injury. Because Plaintiff has not plausibly alleged that the Popcorn Products were unfit for human consumption, her claim for breach of implied warranty must fail. *See, e.g.*, *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 896-97 (C.D. Cal. 2013).

### E. Alternatively, this Court May Exercise its Discretion to Dismiss or Stay this Case on Primary Jurisdiction Grounds.

Because Plaintiff lacks standing and fails to state a claim, dismissal with prejudice is appropriate. Any adjustment the FDA may later make to the current GRAS status of PHOs would not cure the fatal deficiencies outlined above. But in light of the clear relationship between the FDA's review and the merits of Plaintiff's claims, the primary jurisdiction doctrine provides an independent basis for dismissal or stay of this action (should this case otherwise go forward toward the merits).

As Plaintiff notes, the primary jurisdiction doctrine applies "where there is (1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration. *Davel Commc'ns v. Qwest Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006). Plaintiff does not dispute the first three elements, but contends that the doctrine should not apply because (1) this case does "not involve a complex scientific issue" that calls for the FDA's scientific or technical expertise; and (2) courts have repeatedly rejected primary jurisdiction arguments in similar cases. (Opp'n at 23.) Plaintiff is wrong on both counts.

First, Congress granted the FDA jurisdiction to decide whether to change a substance's GRAS status. 21 C.F.R. § 170.38. Specifically, the FDA is empowered

to: (a) notice a proposed change of GRAS status, (b) seek comments, (c) evaluate those comments, and (d) utilize its expertise to assess whether "convincing evidence" justifies continued GRAS status. *Id.* Here, the FDA has noticed a potential change of GRAS status and is apparently now analyzing comments and data. 78 F.R. 67169-01 at 67169. But the FDA has made clear that only "[i]f [the proposed change is] finalized . . .food manufacturers would no longer be permitted to sell PHOs . . . without prior FDA approval." *Id.*

Second, Plaintiff's cases are inapposite, as none involve the use of a food substance currently under FDA review.[5] More apposite would be the many cases applying the primary jurisdiction doctrine in the context of "evaporated cane juice," where the FDA has requested public comment regarding a "preliminary" finding that this ingredient term should not be used.[6] Notably, Plaintiff's argument regarding the statute of limitations was expressly rejected in one of those cases. *See Swearingen v. Yucatan Foods, L.P.*, 2014 WL 2115790 (N.D. Cal. May 20, 2014), at *2. Accordingly, should the court determine to exercise its discretion under the primary jurisdiction doctrine, it should still dismiss—not stay—the case.

Dated: December 15, 2014   WINSTON & STRAWN LLP

             By: */s/ Amanda L. Groves*
               Amanda L. Groves
               Attorneys for Defendant
               DIAMOND FOODS, INC.

---

[5] (Opp'n at 23 (cases cited from lines 10 through 25.).)

[6] *See, e.g., Saubers v. Kashi Co.*, No. 13CV899 JLS (BLM), 2014 WL 3908595, at 2-5 (S.D. Cal. Aug. 11, 2014); *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF, 2014 WL 6657809, at *1, fn.1 (Nov. 21, 2014) ("Defendant's alternative request for stay is made in a footnote in the reply brief. . . . Given the trend in this District for staying labeling cases involving evaporated cane juice, the Court would have considered the propriety of a stay even absent Defendant's request.").