1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10   JACQUELYN MCGEE,                    )   Civil No.  14cv2446 JAH (DHB)
                                         )
11                    Plaintiff,         )   ORDER GRANTING DEFENDANT
     v.                                  )   DIAMOND FOODS' MOTION TO
12                                       )   DISMISS COMPLAINT [Doc. No. 7]
     DIAMOND FOODS, INC.,                )
13                                       )
                      Defendant.         )
14   _____ )

15

16          Presently before the Court is Defendant Diamond Foods, Inc.'s ("Defendant")

17   motion to dismiss Plaintiff Jacquelyn McGee's ("Plaintiff") complaint.  Doc. No. 7.

18   Plaintiff filed an opposition to Defendant's motion to dismiss.  Doc. No. 8.  Defendant

19   filed a reply to Plaintiff's opposition.  Doc. No. 9.  The hearing date set for December 22,

20   2014 was vacated and the matter was taken under submission without oral argument

21   pursuant to Civil Local Rule 7.1.d.1.  ECF No. 11.  Having considered the parties'

22   arguments and the law, the Court GRANTS Defendant's motion to dismiss.

23                              BACKGROUND[1]

24          On October 14, 2014, Plaintiff filed a class action against Defendant, alleging

25   unfair and unlawful business practices under California Unfair Competition Law, Cal. Bus.

26   & Prof. Code §§ 17200 et seq., public nuisance under Cal. Civ. Code §§ 3479-3493, and

27

28          [1] The background section facts included herein have been entirely taken from Plaintiff's
     Complaint, the operative document in the motion to dismiss analysis.  *See* ECF No. 1.

     14cv2446

breach of implied warranty of merchantability.  See Doc. No. 1.  Plaintiff alleges that Defendant manufactures and sells a variety of popcorn products ("the Trans Fat Popcorns") containing partially hydrogenated vegetable oil ("PHVO"), the only dietary source of artificial trans fat ("TFA"), in its Pop Secret brand, which Plaintiff purchased and consumed.  Doc. No. 1 at ¶¶ 3-4.  Plaintiff alleges that, since there is "no safe level" of TFA intake and there are safe, low-cost, and commercially acceptable alternatives to TFA, Defendant unfairly elects not to use substitutes in the Trans Fat Popcorns.  Doc. No. 1 at ¶¶ 5, 14.  Plaintiff further alleges that consumption of TFAs is extremely harmful (Id. at ¶¶ 14-20), contributing to the development of cardiovascular disease (Id. at ¶¶ 27-37), type-2 diabetes (Id. at ¶¶ 38-42), breast, prostate, and colorectal cancer (Id. at ¶¶ 43-48), alzeheimer's disease and cognitive decline (Id. at ¶¶ 49-53), and organ damage (Id. at ¶ 54).

On November 12, 2014, Defendant filed the present motion to dismiss, arguing that Plaintiff lacks Article III standing because she suffered no "injury in fact" and, notwithstanding the standing argument, Plaintiff fails to state a claim for which relief can be granted.  See Doc. No. 7-1.  On December 8, 2014, Plaintiff filed a response in opposition to Defendant's motion to dismiss.  Doc. No. 8.  Defendant then filed a reply to Plaintiff's response on December 15, 2014 along with Defendant's objection[2] to Gregory S. Weston's Declaration and journal article exhibits in support of Plaintiff's opposition.  Doc. Nos. 9, 10.  On August 10, 2015, Plaintiff filed a notice of supplemental authority referring to (1) the Food and Drug Administration's ("FDA") June 17, 2015 final determination regarding partially hydrogenated oils (80 Fed. Reg. 34650), and (2) the July 15, 2015 order granting in part and denying in part defendant's motion to dismiss in Guttmann v. Nissin Foods Co., 2015 U.S. Dist. LEXIS 92756 (N.D. Cal.).  See Doc. No. 17.  Defendant filed a response to Plaintiff's notice of supplemental  authority on August 18, 2015.  See Doc. No. 18.  On August 21, 2015, Defendant provided notice of

---

[2] The Court sustains Defendant's objection and will consider only the facts alleged on the face of the complaint in determining the merits of the motion to dismiss.  See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

1  supplemental authority[3] to the Court regarding Backus v. General Mills, Inc., 2015 WL
2  4932687 (N.D. Cal.).  See Doc. No. 19.

3                                STANDARD OF REVIEW

4  I.  12(b)(1)

5          Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek
6  to dismiss a complaint for lack of jurisdiction over the subject matter.  The federal court
7  is one of limited jurisdiction.  See Gould v. Mutual Life Ins. Co. v. New York, 790 F.2d
8  769, 774 (9th Cir. 1986).  As such, it cannot reach the merits of any dispute until it
9  confirms its own subject matter jurisdiction.  See Steel Co. v. Citizens for a Better
10 Environ., 523 U.S. 83, 95 (1998).  When considering a Rule12(b)(1) motion to dismiss,
11 the district court is free to hear evidence regarding jurisdiction and to rule on that issue
12 prior to trial, resolving factual disputes where necessary.  See Augustine v. United States,
13 704 F.2d 1074, 1077 (9th Cir. 1983).  In such circumstances, "[n]o presumptive
14 truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not
15 preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Id.
16 (quoting Thornhill Publishing Co. v. General Telephone & Electronic Corp., 594 F.2d
17 730, 733 (9th Cir. 1979)).  Plaintiff, as the party seeking to invoke jurisdiction, has the
18 burden of establishing that jurisdiction exists. See Kokkonen v. Guardian Life Ins. Co. of
19 Am., 511 U.S. 375, 377 (1994).

20 II.  12(b)(6)

21         Rule 12(b)(6) tests the sufficiency of the complaint.  Navarro v. Block, 250 F.3d
22 729, 732 (9th Cir. 2001).  Dismissal is warranted under Rule 12(b)(6) where the
23 complaint lacks a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749
24 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule
25 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

26

27         [3] Defendant also suggested that further briefing may be appropriate to address Backus and other
28 authorities cited in earlier notices of supplemental authority.  However, no motion for leave to file
   further briefing or ex parte motion were filed by either party.  Thus, the Court finds that all issues have
   been fully briefed by the parties.

Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory.  Robertson, 749 F.2d at 534.  While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 547).  A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.  Thompson v. Davis, 295 F.3d 890, 895 (9th  Cir. 2002);  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts.

14cv2446

1  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

2  III.  Primary Jurisdiction Doctrine

3      "The primary jurisdiction allows courts to stay proceedings or dismiss a complaint

4  without prejudice pending the resolution of an issue within the special competence of an

5  administrative agency."  Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir.

6  2008).  The doctrine "is to be used only if a claim requires resolution of an issue of first

7  impression, or of a particularly complicated issue that Congress has committed to a

8  regulatory agency."  Id. at 1114 (citation omitted).  The doctrine "is committed to the

9  sound discretion of the court when 'protection of the integrity of a regulatory scheme

10 dictates preliminary resort to the agency which administers the scheme.'"  Syntek

11 Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 781 9th Cir. 2002) (citation

12 omitted).  Courts consider the following non-exhaustive factors in deciding whether the

13 doctrine of primary jurisdiction applies: "(1) the need to resolve an issue that (2) has been

14 placed by Congress within the jurisdiction of an administrative body having regulatory

15 authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive

16 regulatory authority that (4) requires expertise or uniformity in administration."  Id.

17                              DISCUSSION

18     Defendant moves to dismiss Plaintiff's complaint on the grounds that Plaintiff lacks

19 Article III standing (Doc. No. 7-1 at 9-12).  Notwithstanding her standing, Defendant

20 argues that Plaintiff fails to state a claim of "unfair" business practices under California's

21 unfair competition law ("UCL") (Id. at 12-15), Plaintiff has not alleged an injury which

22 constitutes a public nuisance (Id. at 15-16), and Plaintiff's claim for breach of implied

23 warranty of merchantability fails as a matter of law (Id. at 16-18).  Moreover, Defendant

24 suggests that the primary jurisdiction doctrine should apply here as it asserts that Plaintiff

25 seeks a judicial ban of conduct regulated by the FDA and California legislature.  Id. at 5.

26     In opposition, Plaintiff contends that she has standing to bring this action as she

27 faces a credible threat of harm.  Doc. No. 8 at 3-11.  Plaintiff contends, respectively, that

28 her increased risk of disease from consuming trans fat is a credible threat of harm (Doc.

5

14cv2446

No. 8 at 4-6), Defendants's unfair business practices increase Plaintiff's risk of contracting disease (Id. at 6-8), and she suffered economic injury when she paid for a product detrimental to her health on her belief that the popcorn was safe  (Id. at 8-11).  Plaintiff also argues that she sufficiently alleges unfair business practices as her complaint satisfies all three tests for unfair practices.  Id. at 11-16.  Plaintiff asserts that she properly alleged a special injury in her public nuisance claim by alleging she suffered both "physical and emotional harm" and "lost money."  Id. at 16-18.  In addition, Plaintiff asserts that Defendant's use of PHVO is not expressly authorized.  Id. at 18-19.  Plaintiff maintains that her breach of implied warranty of merchantability claim sufficiently alleges that Defendant's popcorn is not fit for its ordinary purpose–human consumption.  Id. at 19-22. Plaintiff last argues that dismissal based on the primary jurisdiction doctrine is inappropriate here as no complex scientific issue of first impression exists here and she would be unfairly prejudiced by the tolling of the statute of limitations during the pendency of regulatory or legislative review.  Id. at 22-24.

In its reply, Defendant argues that Plaintiff's alleged injury is not sufficient to establish Article III standing.  Doc. No. 9 at 6-8.  Defendant also argues that neither Plaintiff's allegation of "any consumption" of TFAs causing inflamation and damage to vital organs nor her plain assertions of economic harm establishes standing.  Id. at 8-10. Defendant further contends that Plaintiff's UCL claim fails because she does not state a plausible economic injury which resulted from any unfair competition and it does not satisfy any of the unfairness tests.  Id. at 10-13.  Defendant claims that its lawful use of TFAs does not constitute a public nuisance.  Id. at 13.  Defendant asserts that Plaintiff's implied warranty of merchantability claim fails because plaintiff does not allege any specific injuries she suffered beyond her allegation of internal inflamation upon consumption.  Id. at 13-14.  Defendant contends that the Court may exercise its discretion to dismiss or stay this case on primary jurisdiction grounds.  Id. at 14-15.

On June 17, 2015, the FDA "made a final determination that there is no longer a consensus among qualified experts that partially hydrogenated oils...are generally

14cv2446

1   recognized as safe (GRAS) for any use in human food." 80 Fed. Reg. 34650 (June 17,

2   2015).  The FDA set a date for compliance with its determination as June 18, 2018.  Id.

3   at 34651.  The FDA "encourage[d] submission of scientific evidence as a part of food

4   additive petitions" to determine whether PHVOs could be used in small amounts, and set

5   the compliance date in 2018 "to allow for such petitions and their review." Id. at 34653.

6                                              ANALYSIS

7   I.     Article III Standing

8          Defendant moves to dismiss Plaintiff's complaint because Plaintiff's allegations do

9   not demonstrate either: (1) an increased risk of harm from exposure to a dangerous

10  substance; or (2) the financial loss from purchasing a product in reliance on false or

11  misleading information.  Doc. No. 7-1 at 10-12.  Plaintiff opposes that argument in that

12  her increased risk of disease from consuming TFAs is a credible threat of harm.  Doc. No.

13  8 at 3-6.  Defendant contends that Plaintiff's assertion that "a small probability of injury

14  is sufficient to create a case or controversy" does not establish Article III standing.  Doc.

15  No. 9 at 6-9.

16         Plaintiff alleges that she suffered physical injury when she repeatedly consumed

17  Defendant's popcorn, because consuming TFA in any quantity causes inflammation and

18  damage to vital organs and an increased risk of heart disease, diabetes, cancer, and death.

19  See Doc. No. 1 at ¶ 67.  Plaintiff notes that an actual or imminent injury is a credible

20  threat where a probabilistic harm will materialize.  Nat'l Res. Def. Council v. U.S. E.P.A.,

21  735 F.3d 873, 878 (9th Cir. 2013).  In reliance, Plaintiff contends that the significant

22  amount of medical studies and conclusions contained in the complaint are sufficient to

23  establish Article III standing as an injury in fact resulting from the consumption of TFAs.

24  Doc. No. 8 at 5 (citing Baur v. Veneman, 352 F.3d 625, 637-40 (2d Cir. 2003)[4]).

25

26         [4] In Baur, the Second Circuit found a plaintiff established Article III standing and successfully
     alleged a credible threat of harm to bring suit to require the Secretary of Agriculture and the United
27   States Department of Agriculture (USDA) to ban the use of downed livestock as food for human
     consumption.  In Baur, the plaintiff alleged that (1) downed cattle could transmit a deadly disease for
28   which there was no known cure or treatment, (2) plaintiff's government studies and statements
     confirmed that downed cattle were especially susceptible to the "mad cow" infection, and (3) the risk

                                                       7

Plaintiff argues that "in the Ninth Circuit 'even a small probability of injury is sufficient to create a case or controversy – to take a suit out of the category of the hypothetical'." Doc. No. 8 at 16 (citing Cent. Delta Water Agency v. U.S., 306 F.3d 938, 949 (9th Cir. 2002)[5].  Also, Plaintiff alleges that she lost money as a result of Defendant offering its product for sale, in violation of California law, because she purchased products that were detrimental to her health.  See Doc. No. 1 at ¶ 71.

It is axiomatic that under Article III of the United States Constitution, a federal court may only adjudicate an action if it constitutes a justiciable "case" or a "controversy" that has real consequences for the parties.  Raines v. Byrd, 521 U.S. 811, 818 (1997); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).   One of the baseline requirements for justiciability in federal court is that the plaintiff have standing to assert the claims brought.  Id.  In order to confer standing, an injury must be "(a) 'concrete and particularized'; and (b) 'actual and imminent,' not 'conjectural' or hypothetical.'" Preminger v. Peake, 552 F.3d 757, 763 (9th Cir. 2008) (quoting Lujan, 504 U.S. at 560. An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur."  Susan B Anthony List v. Driehaus, 134 S.Ct. 2334, 2341 (2014).   To establish an increased risk of harm, Plaintiff must show that there is both "(I) a substantially increased risk of harm and (II) a substantial probability of harm with that increase taken into account."  Herrington v. Johnson & Johnson Consumer Cos., 2010 WL 344832, at *3 (N.D. Cal. Sept. 1, 2010) (citation omitted).  Plaintiff has the burden of showing that Article III standing exists

---

of disease transmission arose directly from the USDA's regulatory policy of permitting the use of down cattle for human consumption.  In Baur, the plaintiff sought to have the USDA and FDA immediately "label all downed cattle as adulterated" pursuant to the 21 U.S.C. § 342(a)(5), which provides that any food that is "in whole or part, the product of a diseased animal" shall be deemed "adulterated."  Baur, 352 F.3d at 628.  In Baur, the court found even a moderate increase in the risk of disease may be sufficient to confer standing as plaintiff alleged that downed cattle may transmit vCJD, a fatal neurological disease for which there is no effective treatment or cure.  Baur, 352 F.3d at 637. The USDA, in Baur, was in agreement with the plaintiff that downed cattle were especially susceptible to BSE  infection.  Baur, 352 F.3d at 637-38.

[5] However, later in Central Delta, the Ninth Circuit clarified that it agreed with those circuits that have recognized that only a "credible threat of harm" is sufficient to constitute actual injury for standing purposes.  Central Delta, 306 F.3d at 950.

here.  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 978 (9th Cir. 2011). While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.  See Schmier v. U.S. Ct. of Appeals for the Ninth Cir., 279 F.3d 817, 820 (9th Cir. 2001).

The Court recognizes the differing opinions on the issue of standing between districts within California, highlighted by the findings in Backus v. General Mills, Inc., 2015 WL 4932687 (N.D. Cal Aug. 18, 2015) and Simpson v. California Pizza Kitchen, Inc., 989 F.Supp.2d 1015 (S.D. Cal 2013).   In Simpson, plaintiff based her public nuisance and unlawful business practices claims on Defendant's use of TFAs in their frozen pizzas, alleging there is "no safe level" of TFA intake and consumption increases the likelihood of developing a myriad of diseases.  Simpson, 989 F.Supp.2d at 1019.  The Simpson court found that a substantial increased risk of harm did not exist as the plaintiff failed to allege facts tending to show that her isolated incidents of TFA consumption were sufficient to cause the identified harmful effects.  Id. at 1022.  In addition, the Simpson court found that the plaintiff had not alleged an economic injury in that plaintiff's purchases were not based on false or misleading information.  Id. at 1022-1023.

On the other hand, in Backus, in which plaintiff challenged defendant General Mills' inclusion of TFAs and PHVOs in its baking mixes, the court found that the inflammation of one's organs is identifiable, concrete, and actual.  Backus, 2015 WL 4932687 at *1, *4. While acknowledging the conspicuous labeling and an absence of allegations that the baking mixes did not function properly, the Backus court found standing existed premised upon economic injury because the plaintiff alleged that the sale of the baking mix at issue was actually illegal, and, but for defendant General Mills' noncompliance with California law, plaintiff would not have purchased the mix.  Id. at *6. Of note, the Backus court found that the plaintiff did not allege a sufficient injury to confer standing when considering allegations of future risk in that the plaintiff did not allege that the amounts of TFAs he consumed caused a substantial increase in the risk of

9

14cv2446

1  contracting diseases.  Id. at *7.

2      A.  Standing: Physical Injury

3      The Court is not persuaded by Plaintiff's reliance on non-binding authority in Baur

4  as this case is factually distinguishable.  Unlike the fatal Creutzfeldt-Jacob disease

5  ("vCJD") in Baur, a moderate increase in the risk of developing the diseases identified in

6  Plaintiff's complaint is not sufficient to confer standing in that those diseases are curable

7  or treatable.  Plaintiff presents a significant amount of medical journal and government

8  study evidence to demonstrate the harmful effects of consuming TFAs generally, but,

9  unlike Baur, those studies do not confirm how the TFAs found in Defendant's popcorn

10  create a special susceptibility to contracting the variety of diseases to which Plaintiff

11  alleges she is at risk.  In addition, unlike Baur, where federal statutes called for the USDA

12  and FDA to label the adulterated meat, no statutory mandate exists here to support

13  Plaintiff's request for relief.

14      The Court is not persuaded by the rationale in Backus finding a physical injury had

15  been alleged.  The Backus court liberally construed Ninth Circuit precedent which

16  previously found allegations including "watering eyes and burning noses" to be sufficient

17  as a physical injury.  Backus, 2015 WL 4932687 at *4 (citing Covington v. Jefferson

18  Cnty., 358 F.3d 626, 638 (9th Cir. 2004).  However, the Backus court noted more

19  significant, concrete injuries were alleged, which the Ninth Circuit in Covington found to

20  be sufficient physical injuries.[6]  Here, the Court finds the Plaintiff's allegations of inflamed

21  organs due to the consumption of TFAs do not amount to the  sufficient allegations of

22  physical injuries as found in Covington.  In the complaint, Plaintiff attempts to forecast

23  a future, not present, injury and have this Court accept a bodily response to consumption

24  as concrete evidence that significant diseases will develop.  For example, Plaintiff's

25  complaint alleges she is at risk to develop different diseases without identifying which one

---

[6] In Covington, the complaint alleged the risks of "fires, of excessive animals, insects and other scavengers attracted to uncovered garbage, and of groundwater contamination" from exposure to pollution from a neighboring landfill. Covington, 358 F.3d at 638.  The Ninth Circuit found that, if such occurred, the injuries threatened the plaintiff's enjoyment of life and security of home such that the allegations were sufficient for injury in fact.  Id.

she is specially susceptible to developing.  Although Plaintiff includes a number of medical studies to generally support her claims in the complaint, no study cited within the Complaint states that persons suffering from inflamed organs from TFA consumption will develop one of the enumerated diseases.  <u>See</u> Doc. No. 1.  Thus, the Court finds Plaintiff's risk of developing diseases from her consumption of Defendant's Trans Fat Popcorn is speculative.

Notably, there are no facts or reasonable inferences to be drawn from the allegations in Plaintiff's complaint, or in the studies cited therein, showing how the trans fat popcorn substantially increased her risk of harm, much less the probability of that harm being substantial when she alleges her purchases occurred "once every two or three months over three years"."  <u>See</u> Doc. No. 1 at 15 ¶ 56.  The Court notes the Ninth Circuit requires a showing of a credible threat of harm to satisfy standing.  <u>See</u> <u>Cent. Delta</u>, 306 F.3d at 950.  Consequently, the Court finds Plaintiff did not allege a credible threat of harm and that the injury alleged does not "affect the plaintiff in a personal and individual way."  <u>See</u> <u>Lujan</u>, 504 U.S. at 560 n.1.  Therefore, this Court finds that Plaintiff has not alleged an injury in fact which establishes Article III standing.

B.  Standing: Economic Injury

Likewise, the Court finds that Plaintiff does not allege an economic injury which satisfies Article III standing by alleging that she purchased a product that was less healthy than expected.  Also, the Court finds that Plaintiff received the benefit of her bargain when she consumed Defendant's popcorn.  First, Plaintiff's argument that her ignorance to the ill effects of trans facts caused her to suffer a benefit of the bargain injury does not apply here.  Unlike the facts present in the cases[7] cited by Plaintiff, the existence of TFAs in the trans fat popcorn was included in the nutritional label on the product box and Plaintiff does not allege that Defendant's popcorn labels were misleading.  Essentially,

---

[7] *See* <u>Ivie v. Kraft Foods Global, Inc.</u>, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013); *see also* <u>Samet v. Probtor & Gamble Co.</u>, 2013 WL 3124647 (N.D. Cal. June 18, 2013).

14cv2446

1   Plaintiff's argument fails because she does not allege she would have purchased an

2   alternative product but for Defendant's representations.  She merely argues that she was

3   not a sophisticated consumer.  See Doc. No. 1 at ¶ 69.  The Court agrees with the

4   Simpson court that consumption is the purpose for which consumers purchase food

5   products and plaintiff received the benefit of her bargain from the purchase of Defendant's

6   popcorn once she consumed the popcorn.  See Simpson, 989 F.Supp.2d at 1022.  As in

7   Simpson, Plaintiff's purchases were not made on the basis of false or misleading

8   representations as Defendant made the TFA facts conspicuous in the nutritional facts label

9   on the product box.  Therefore, Plaintiff has not alleged an economic injury which satisfies

10  the UCL or Article III standing requirements.

11       Thus, Defendant's Motion to Dismiss Complaint is GRANTED due to Plaintiff's

12  failure to allege an injury-in-fact, physical or economic, which satisfies the Article III

13  standing requirement.

14  II.    California Unfair Competition Law

15       Defendant argues, notwithstanding the Court's ruling on standing, that Plaintiff's

16  claim under the UCL "unfairness" prong should be dismissed because she does not state

17  a claim under any of the three applicable tests: the Federal Trade Commission ("FTC")

18  test, the public policy test, or the balancing test.  Doc. No. 7-1 at 12-15.  Plaintiff

19  contends that her unfairness claims are not appropriate for dismissal on the pleadings in

20  that the complaint satisfies all three tests for unfair business practices.  Doc. No. 8 at 11-

21  16.  Defendant replies that Plaintiff's claims, if the Court finds them inadequate, can be

22  dismissed on the pleadings.  Doc. No. 9 at 10.

23       California courts utilize three different tests to determine whether a business

24  practice is "unfair" under the UCL due to disagreement among California appellate courts.

25  See Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010).  An act or practice

26  is unfair if the consumer's injury is substantial, is not outweighed by any countervailing

27  benefits to consumers or to competition, and is not an injury the consumers themselves

28

14cv2446

1  could reasonably have avoided.   Daugherty v. Am. Honda Motor Co., Inc., 144

2  Cal.App.4th 824, 839 (2006) (the "FTC" test).   Courts also use a "public policy test,"

3  requiring plaintiffs to establish the challenged practice violates public policy as declared

4  by specific statutory or regulatory provisions.   Bardin v. Daimler Chrysler Corp., 136

5  Cal.App.4th 1255, 1261 (2006).   Other courts have held that the court must apply a

6  "balancing test" that defines unfair practices as those that are "immoral, unethical,

7  unscrupulous, or substantially injurious to consumers," where the utility of the practice

8  does not outweigh the gravity of harm to its alleged victim.   Schnall v. Hertz Corp., 78

9  Cal.App.4th 1144, 1167 (2000).

10         Under the FTC test, the Court finds that Plaintiff's injury was not substantial and

11 could have been avoided.   For the reasons articulated in the Article III Standing section

12 above, the Court determines that Plaintiff's alleged injury is not substantial.

13 Notwithstanding, the Court notes, as did the court in Simpson, that any alleged injury

14 suffered by Plaintiff could have been easily avoided at Plaintiff's discretion.  See Simpson,

15 989 F.Supp.2d at 1026.   In fact, Plaintiff attaches a list of "Competing Microwave

16 Popcorn Not Made With Artificial Trans Fat" to her complaint.  See Doc. No. 1 at app.

17 II.   Accordingly, Plaintiff selected Defendant's popcorn at her discretion from a vast

18 amount of other non-TFA popcorn products she could have selected.   Plaintiff does not

19 allege that Defendant failed to make the use of TFAs in the trans fat popcorn conspicuous

20 in its nutritional facts label.   The Court finds that Plaintiff fails the FTC test as her

21 alleged injuries were not substantial and reasonably avoidable.  Id.

22         Under the public policy test, the Court finds that Plaintiff failed to state a claim

23 as she did not allege applicable statutory authority that was violated by Defendant.   The

24 two statutes cited by Plaintiff, California Health & Safety Code § 114377 and California

25 Education Code § 49431.7, were tailored to prohibit foods containing TFAs from being

26 consumed in restaurants and schools, but these statutes did not bar consumption of such

27 foods when purchased in a retail transaction.   In fact, the Legislative Counsel's Digest

28

following the California Health & Safety Code § 114377 notes the California Uniform Retail Food Facilities Law provides regulation of only health and sanitation standards for retail food facilities by the State Department of Public Health.

Plaintiff argues that the citations to other statutes indicate a public policy of protecting public health and reducing the amount of trans fat in the public's diet. Doc. No. 8 at 23. Plaintiff also contends that she is not required to plead direct violations of a specific statute and argues she only is required to allege defendant's conduct violates the public policy embodied in the statutes. Id. at 23-24 (citing In re Adobe Sys. Privacy Litig., 66 F.Supp.3d 1197 (N.D. Cal. 2014)). However, the court in In re Adobe reasoned that the California legislative intent was clear on the public policy of "protecting customer data" and Adobe's conduct was "comparable" to a violation of law cited in the statutory collective alleged in plaintiff's complaint. Id. at 1227. The facts here do not present a comparable violation because there was no prohibition on selling Defendant's popcorn in the retail market where Plaintiff made her purchases. Consequently, Plaintiff fails the public policy test as she did not and cannot allege a comparable violation of law that demonstrates an express or implicit public policy in the retail space.

Under the "balancing" test, the Court finds, as it does above, Plaintiff has not alleged a cognizable injury-in-fact. In any event, at the time Plaintiff alleges she was injured, TFAs were considered by the FDA to be generally recognized as safe (GRAS) for any use in human food. As such, Defendant's use of TFAs in the trans fat popcorn was lawful and provided a countervailing utility. Although the FDA recently found the use of TFAs in human food is no longer GRAS, the FDA set a date of compliance with its determination on June 18, 2018. 80 Fed.Reg. 34650, 34651 (June 17, 2015). Accordingly, Defendant's business acts were lawful at the time of Plaintiff's purchase and consumption of the trans fat popcorn. In addition, increasing profit margins does not constitute an unfair business practice. See Kunert v. Mission Financial Servs. Corp., 110 Cal.App.4th 242, 265 (2003). Thus, the Court finds Plaintiff's UCL claim fails the

1    balancing test.

2          Therefore, the Court DISMISSES Plaintiff's UCL claim as her allegations fail all

3    three "unfairness" tests.

4    III.  Public Nuisance

5          Defendant argues that its lawful use of TFAs did not constitute a public nuisance.

6    Doc. No. 7-1 at 15-16.  Specifically, Defendant argues that Plaintiff must allege a special

7    injury she suffered beyond the general public's harm.  Id.  Plaintiff opposes that

8    Defendant using TFAs in trans fat popcorn is a public nuisance.  Doc. No. 8 at 25-28.

9    Specifically, Plaintiff alleges the public harm is Defendant's interference with the public's

10   "right to a safe food supply"and "interest in having only safe foods available for purchase."

11   Id. at 25.  Plaintiff also contends her physical and emotional harm and lost money is the

12   type of special harm required to bring a public nuisance claim.  Id. at 26.

13         The "different" harm plaintiff must allege in order to demonstrate standing to bring

14   an action sounding in public nuisance requires that she "show special injury to [herself]

15   of a character different in kind–not merely in degree–from that suffered by the general

16   public."  Simpson, 989 F.Supp.2d at 1025 (citing Institoris v. City of Los Angeles, 210

17   Cal.App.3d 10, 20 (1989)).  This requirement of a different harm stems from the belief

18   that, because a public nuisance action concerns a wrong against the community, it is

19   "ordinarily properly left to the appointed representative of the community."  Id. (citing

20   Venuto v. Owens-Corning Fiberglass Corp., 22 Cal.App.3d 116, 123 (1971) (internal

21   citations omitted)).

22         Plaintiff's allegations of harm are not distinguishable from the harm suffered by

23   other class members.  The effects of TFAs used in the trans fat popcorn are not distinctly

24   harmful to Plaintiff, but rather constitute a general health hazard to anyone who

25   consumes them.  Simpson, 989 F.Supp.2d at1025.  As such, Plaintiff's allegations merely

26   reflect her personal experience of a generalized harm suffered by the public.  Accordingly,

27   the Court finds that Plaintiff does not allege the type of special harm required to support

28

14cv2446

1  a public nuisance claim. Therefore, the Court GRANTS Defendant's motion to dismiss

2  Plaintiff's public nuisance claim.

3  IV.  Implied Warranty of Merchantability

4      Plaintiff alleges that Defendant's popcorn is not fit for ordinary use–human

5  consumption–because it contains large amounts of TFAs.  See Doc. No. 1 at ¶¶ 19-20, 97.

6  However, Plaintiff does not dispute that the trans fat popcorn's label states it contains

7  TFAs as required by FDA labeling standards.  Doc. No. 7-1 at 18.  It is noted that Plaintiff

8  alleges that she "repeatedly purchased and consumed" the trans fat popcorn.  See Doc.

9  No. 1 at ¶¶ 4, 8.  Like Simpson, Plaintiff had a sufficient opportunity to examine

10  Defendant's popcorn prior to purchase.  Simpson, 989 F.Supp,2d at at 1026.  Similarly,

11  here, Plaintiff does not allege any justifications for her failure to inspect the trans fat

12  popcorn before purchasing and consuming beyond her lack of sophistication as a lay

13  consumer.  See Doc. No. 8 at 29-30.  For these reasons, the Court finds that Plaintiff

14  waived her rights under the implied warranty, and Defendant's motion to dismiss this

15  claim is GRANTED.

16                              CONCLUSION

17      For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss.

18  Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.  If Plaintiff wishes, she

19  may file an amended complaint within fourteen days of the date this Order is

20  electronically docketed.  Failure to file an amended complaint by this date may result in

21  dismissal with prejudice.[8]

22      IT IS SO ORDERED.

23  Dated: March 1, 2016

                                        JOHN A. HOUSTON
24                                      United States District Judge

25

26      [8]  The Court recognizes that on June 17, 2015, the FDA "made a final determination that there
     is no longer a consensus among qualified experts that pHVOs...are generally recognized as safe
27   (GRAS) for any use in human food."  80 Fed.Reg. 34650 (June 17, 2015).  The Court has determined
     the recent FDA ruling does not alter the analysis here.  Due to the Court's finding that Plaintiff lacks
28   standing here, the Court will not address the primary jurisdiction doctrine arguments.

14cv2446